IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LE-VEL BRANDS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:19-CV-00154-L** |
| | § | |
| DUSTIN BLAND, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Dustin Bland's Motion to Dismiss Complaint (Doc. 22), filed February 21, 2019; and Defendant's Evidentiary Objections to Declaration of Christopher Schmidt and Motion to Strike (Doc. 49), filed August 16, 2019. After careful consideration of the motions, responses, replies, pleadings, record, evidence, testimony, arguments presented at the February 26-27, 2019 hearing, and applicable law, the court **denies** Defendant's Motion to Dismiss Complaint (Doc. 22); and **overrules and denies** Defendant's Evidentiary Objections to Declaration of Christopher Schmidt and Motion to Strike (Doc. 49).

### I. Factual and Procedural Background

Plaintiff Le-Vel Brands, LLC ("Plaintiff" or "Le-Vel"), with its principal place of business located in Collin County, Texas,[1] is a health and wellness multi-level marketing company that sells dietary supplements, including a product line called "Thrive." Le-Vel markets its products

---

[1] During the preliminary injunction hearing, Plaintiff's Chief Technology Officer testified that Le-Vel is a "one hundred-percent cloud-based company," which means it does not have a corporate office. Prelim. Inj. Hr'g Tr. 6:23-24, 8-22 (Feb. 26, 2019). According to Plaintiff's Original Petition, and supported by Texas Secretary of State records, Plaintiff is incorporated in Texas and lists a mailing address located in Frisco, Collin County, Texas.

**Memorandum Opinion and Order – Page 1**

exclusively through the use of "Promoters." Promoters earn money through commissions and bonuses, and by enrolling other individuals as downline Promoters.[2] On April 17, 2017, Defendant Dustin Bland ("Defendant" or "Mr. Bland"), an Indiana resident, became a Promoter for Le-Vel. During his time as a Promoter, he "created a network of approximately 16,000 downline Le-Vel Promoters and 65,000 Le-Vel customers[;] and earned commissions totaling over $1,000,000." Pl.'s Original Pet. ¶ 10. According to Plaintiff, Defendant joined Isagenix in late 2018 and has continued to "solicit Le-Vel's Promoters and clients in violation of the Promoter Agreement." *Id.* On December 28, 2018, Le-Vel terminated Mr. Bland, contending that he was "engaging in blatant violations of the Non-Solicitation Agreement by contacting Le-Vel Promoters in [an] attempt to direct them away from Le-Vel and over to Isagenix [a competing company] . . . and using [his] position as a Leader with Le-Vel to hold meetings with other Le-Vel Promoters in order to then pitch an [Isagenix] presentation in order to recruit them into Isagenix." *Id.* ¶ 11. Plaintiff further asserts that, even after the company sent a letter to Defendant explaining the basis for his termination and outlining his continued obligations pursuant to the Agreement, Defendant has "continued to solicit Le-Vel's customers and Promoters." *Id.* ¶ 12.

On January 1, 2019, Plaintiff filed its Original Petition and Verified Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction (Doc. 1-3) ("Petition") in the 68th Judicial District Court of Dallas County, Texas. In its Petition, it alleges several causes of action against Defendant: (1) breach of contract; (2) business disparagement; (3) defamation; (4) tortious interference with existing contracts; and (5) tortious interference with prospective business relations. These claims stem from Mr. Bland's alleged violation of the

---

[2] Downline Promoters refer to individuals who are recruited by a current Le-Vel recruiter to join its team.

**Memorandum Opinion and Order – Page 2**

restrictive covenants provided in an agreement between the parties, referred to as the Promoter Agreement[3] (the "Agreement").

To enroll as a Promoter, an individual must click on a box next to the phrase, "I agree to the Policies and Procedures," which has "Policies and Procedures" hyperlinked[4] in blue. Upon clicking the hyperlink, the Policies and Procedures appear in a separate window. The Agreement contains various terms, including one that prohibits a Promoter from directly or indirectly soliciting any Le-Vel customers or Promoters during the term of the Agreement and for a period of 12 months thereafter. In section 1.2 of the Agreement, it further states that "[a] Promoter will under no circumstance disparage or infringe upon the Le-Vel name, image[,] or reputation in connection with the promotion of Le-Vel products or misappropriate any confidential or proprietary information or trade secrets (including Customer and Promoter names and address lists) for use by the Promoter or others." Additionally, the Agreement includes language establishing personal jurisdiction of the federal courts in Dallas, Texas over Promoters and proper venue in the federal courts in Dallas County, Texas. Plaintiff contends that when Defendant became a Promoter for the company, he "affirmatively agree[d] to the terms of the Promoter Agreement." Pl.'s Original Pet. ¶¶ 6-7, 9-10.

On January 18, 2019, Defendant removed the case based on diversity jurisdiction. On February 9, 2019, Plaintiff filed a Motion for Preliminary Injunction (Doc. 17). On February 21, 2019, Defendant filed his Motion to Dismiss Complaint (Doc. 22), asserting that Plaintiff's

---

[3] The parties use different verbiage to the refer to the agreement at issue. Le-Vel refers to it as the "Promoter Agreement," and Mr. Bland refers to it as "Policies and Procedures." The document itself is titled both "Promoter Agreement" and "Policies and Procedures" in the upper left-hand corner of the first page. Accordingly, the terms are used interchangeably.

[4] When an individual clicks on the words, a separate window or document appears for review.

**Memorandum Opinion and Order – Page 3**

Petition should be dismissed pursuant to the following: (1) Federal Rule of Civil Procedure 12(b)(2) for a lack of personal jurisdiction; (2) Federal Rule of Civil Procedure 12(b)(3) for improper venue; (3) Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim as it relates to all alleged counts asserted in Plaintiff's Petition; and (4) the Texas Anti-Slapp Act as it relates to Counts Two through Five of Plaintiff's Petition. On February 26-27, 2019, the court held a hearing regarding Plaintiff's request for a preliminary injunction and allowed the parties to present evidence related to whether the court had personal jurisdiction over Defendant. Prelim. Inj. Hr'g Tr. 3:17-4:10 (Feb. 26, 2019). The court has declined to rule on Plaintiff's request for a preliminary injunction until the matter of personal jurisdiction is resolved.

## II. Defendant's Evidentiary Objections and Motion to Strike

On August 16, 2019, Defendant filed its Evidentiary Objections to Declaration of Christopher Schmidt[5] (the "Declaration") and Motion to Strike (Doc. 49). In its motion, Defendant contends that the court should strike certain statements in the Declaration, as they are conclusory and speculative. Defendant, however, fails to state any applicable authority warranting his motion to strike the Declaration at this stage of the proceedings. Further, pursuant to the Federal Rules of Civil Procedure, the court will already consider whether statements are conclusory and speculative in conducting its 12(b)(2) and 12(b)(6) analysis. Thus, after reviewing the motion, response, reply, and the Declaration, the court **overrules** Defendant's evidentiary objections and **denies** his motion to strike.

---

[5] Doc. 41-1.

**Memorandum Opinion and Order – Page 4**

### III. Defendant's Motion to Dismiss

#### A. Legal Standard

##### 1. Rule 12(b)(2) – Lack of Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case for the court's jurisdiction over a nonresident defendant. *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a prima facie case that personal jurisdiction is proper, *id.*; proof by a preponderance of the evidence is not required. *International Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 556 (N.D. Tex. 2003) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)). The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Stuart*, 772 F.2d at 1192. Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). After a plaintiff makes his prima facie case, the burden then shifts to the defendant to present "a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993). Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the court must

**Memorandum Opinion and Order – Page 5**

determine whether (1) the defendants have established "minimum contacts" with the forum state; and, (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Id.* at 414 n.9.

In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest

in furthering social policies. *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). As noted above, "once minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Eviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp. 2d 720, 725 (S.D. Tex. 1999) (*quoting Burger King*, 471 U.S. at 277). In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id*. (*quoting Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

2. **Rule 12(b)(3) – Improper Venue**

Once a defendant raises the issue of improper venue, the plaintiff has the burden to prove that the chosen venue is proper. *International Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d at 558; *Psarros v. Avior Shipping, Inc.*, 192 F. Supp. 2d 751, 753 (S.D. Tex. 2002). In resolving a Rule 12(b)(3) motion, "the court is permitted to look at evidence beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B. V.*, 570 F.3d 233, 238 (5th Cir. 2009) (internal quotation marks omitted). Under the general venue statute, venue is proper in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Section 1391 further provides that "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action . . . ." 28 U.S.C. § 1391(c)(2). If the district court of a district in which a case is filed determines that venue is improper, it must dismiss the case or may, in the interest of justice, transfer it to a district or division where it could have been brought. 28 U.S.C. § 1406(a).

### 3. Rule 12(b)(6) - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of

**Memorandum Opinion and Order – Page 8**

showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences

**Memorandum Opinion and Order – Page 9**

favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

### B. Discussion

#### 1. Lack of Personal Jurisdiction and Improper Venue

Defendant asserts that the court does not have personal jurisdiction over him and that a federal court in Dallas County, Texas, is not a proper venue. With regard to general jurisdiction, he contends that the court does not have general jurisdiction over him because he resides in Indiana. He also concedes that "Plaintiff has not pled general jurisdiction against [him]," and asks the court to take judicial notice of paragraphs 5-7 of Plaintiff's Petition, which discuss allegations related to jurisdiction and venue. Based on the pleadings, the court agrees that it does not have general jurisdiction over Defendant; nor has Plaintiff asserted such.

As it relates to specific jurisdiction, Plaintiff asserts that Mr. Bland "consented to be subject to the personal jurisdiction of the state and federal courts within Dallas, Texas, when he agreed to

the terms of the Promoter Agreement." Pl.'s Original Pet. ¶ 6. Plaintiff also asserts that venue is proper in Dallas County based on the Agreement. *Id.* ¶ 7. Defendant argues, however, that "Plaintiff failed to attach any evidence that [he] actually agreed to the Promoter Agreement." Def.'s Mot. 4. Specifically, he contends that the Agreement does not contain any signatures, or even a place to sign, and, moreover, he did not see or agree to such a document or the terms contained therein. Defendant further asserts that he did not enroll himself as a Promoter, but, instead, "[a]nother person has admitted to signing [him] up with the encouragement and assistance of the Plaintiff." *Id.* Accordingly, he contends that there is no contract between him and Plaintiff, and, thus, he did not consent to personal jurisdiction or venue in the federal courts in Dallas, Texas. Alternatively, Defendant asserts that even if Plaintiff could prove a contract exists, "the mere existence of an alleged agreement cannot confer specific jurisdiction [over him]." Def.'s Mot. 8. (citing *American Gen. Life Ins. Co. v. Rasche*, 273 F.R.D. 391, 395 (S.D. Tex. 2011) (citing *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986)).

In response, Plaintiff maintains the existence of an agreement between the parties and that Defendant, through an agent, agreed to its terms and, accordingly, consented to the personal jurisdiction of this court and to Dallas County, Texas, as a proper venue. Plaintiff relies on Defendant's testimony during his deposition and the preliminary injunction hearing that he gave Chris Casey ("Mr. Casey"), a Promoter with Le-Vel, "permission to register [him] as a Promoter." Pl.'s Resp. ¶¶ 34-35; Prelim. Inj. Hr'g Tr. 245:20-247:11 (Feb. 26, 2019). Accordingly, Plaintiff contends that Defendant's conduct granted Mr. Casey actual authority, or, at minimum, apparent authority, to accept the Agreement on his behalf. Alternatively, it contends that even if the court finds no agency relationship existed between Defendant and Mr. Casey, Defendant "ratified his acceptance of the Promoter Agreement by accepting the benefits of the contract, even if [he] was

unaware of the terms of the Promoter Agreement." Pl.'s Resp. ¶ 43. Defendant concedes that he gave Mr. Casey permission to enroll him as a Promoter; however, he maintains that he did not give him permission to enter into a contract on his behalf. Def.'s Reply 8; Prelim. Inj. Hr'g Tr. 116:19-23 (Feb. 27, 2019). Moreover, Defendant asserts that Plaintiff cannot prove the elements of ratification of the contract, as he did not know the Agreement existed. Def.'s Reply 10.

Generally, at the motion-to-dismiss stage regarding a Rule 12(b)(2) analysis, a plaintiff is only required to establish a prima facie case establishing that the court has personal jurisdiction over the defendant. *Ham*, 4 F.3d at 415. Once the plaintiff meets this burden, the burden shifts to the defendant to provide a compelling reason as to why rendering jurisdiction is unreasonable. *Burger King Corp.*, 471 U.S. at 477. Based on review of the pleadings, the court determines that Plaintiff has sufficiently pleaded that an agreement between the parties exists. Defendant, however, denies the existence of an agreement. Given this dispute, the court must decide whether an agreement between the parties existed before addressing personal jurisdiction and venue, as the resolution of these matters turns on the existence of the contract.

   a. **Choice-of-Law Analysis**

Section 8.15 of the Agreement includes a provision stating, "[A]ll claims arising out of or relating to the Agreement . . . shall be governed by Texas law." Thus, Plaintiff argues that Texas law governs the contract-formation dispute. Because there is a dispute about the contract's formation, however, the court must look outside of the Agreement to choose the applicable state law with which to analyze this threshold issue. *Klebba v. Netgear, Inc. Co.*, No. 1:18-CV-438-RP, 2019 WL 453364, at *2 (W.D. Tex. Feb. 5, 2019). Specifically, the court must apply state-law principles of the forum state to resolve this contractual dispute, which, in this case, is Texas. *Railroad Mgmt. Co., L.L.C. v. CFS La. Midstream, Co.*, 428 F.3d 214, 222 (5th Cir. 2002) (citing

**Memorandum Opinion and Order - Page 12**

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Under Texas's choice-of-law rules, a contract dispute is governed by the law of the state with "the most significant relationship to the transactions and the parties." *Maxus Expl. Co. v. Moran Bros., Inc.*, 817 S.W. 2d 50, 53 (Tex. 1991). In determining the state with "the most significant relationship," the court must consider: "(1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation[,] and place of business of the parties." Restatement (Second) of Conflict of Laws § 188; *Weber v. PACT XPP Tech., AG*, 811 F.3d 758, 771-72 (5th Cir. 2016).

Based on the record, the court determines that Indiana Law, not Texas law, governs the contract-formation dispute, as it has the most significant relationship to the Agreement and the parties. First, the Agreement, assuming the court accepts Plaintiff's agency argument, was entered into electronically by Mr. Casey, a Florida resident, after receiving permission via telephone from Defendant, an Indiana resident. Second, the evidence shows that Defendant was able to perform his duties as a Promoter remotely from any location, but he primarily performed them from Fishers, Indiana. He also recalled one instance of enrolling a Promoter while on vacation in Mexico and one instance of traveling to Texas for a "team building thing" for one of his enrollees. Def.'s Mot. 9 (citing Bland Decl. ¶ 6; Bland Depo. 63:12-18; 65:15-67:15).

Plaintiff placed significant emphasis on Defendant's one trip to Texas, but the court concludes that the one trip to Texas does not constitute the level of performance considered under this analysis. Without more, the court concludes that the majority of Defendant's performance under the contract took place in Indiana. The court also determines that more weight should be given to Defendant's state of residence (Indiana) than Plaintiff's principal place of business (Texas), as no other factors favor Texas. *See Klebba*, No. 1:18-CV-438-RP, 2019 WL 453364, at

**Memorandum Opinion and Order - Page 13**

*3 ("Although Netgear headquartered in California, there is no evidence that the other factors favor California.").

No negotiations related to the Agreement took place, and the subject matter of the Agreement is broad enough to include any state; thus, the court concludes that these factors do not favor Texas or Indiana and have no bearing on the court's determination of the applicable state law. For the reasons discussed, the court determines that Indiana is the state with the most significant relationship to the contract-formation dispute, and, accordingly, Indiana law governs whether a contract existed between the parties. The court must now decide whether Defendant assented to the terms of the Agreement.

### b. Existence of an Agreement Between Le-Vel and Mr. Bland

The fundamental dispute is whether Mr. Casey, by accepting the Policies and Procedures on Defendant's behalf, binds Defendant to its terms. Defendant asserts that Mr. Casey did not have the authority to bind him to the Agreement and, thus, no agency relationship exists. The court disagrees.

Indiana law recognizes three classifications of authority: actual authority, apparent authority, and inherent authority. "Actual authority is created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account." *Menard, Inc. v. Dage-MTI, Inc.*, 726 N.E.2d 1206, 1210 (Ind. 2000) (internal quotations omitted) (citing *Shell Oil Co. v. Meyer*, 705 N.E.2d 962, 972 (Ind. 1998)). Apparent authority is created through a "third party's reasonable belief that the principal has authorized the acts of its agent." *Menard, Inc.*, 726 N.E.2d at 1210 (citation omitted). Moreover, "it arises from the principal's indirect or direct manifestations to a third party and not from the representations or acts of the agent." *Id.* Inherent authority, on the other hand, is

Memorandum Opinion and Order - Page 14

not derived from any authority but "solely from the agency relation and exists for the protection of persons harmed by or dealing with a servant or other agent." *Id.* at 1211 (internal quotation marks and citation omitted).

Defendant admitted that he gave Mr. Casey permission to enroll him as a Promoter. Thus, the court concludes that Defendant gave Mr. Casey actual authority to act on his behalf. The question then becomes whether Mr. Casey had authority to accept the Policies and Procedures on Defendant's behalf, and based on the testimony and evidence, the court concludes that he did. The parties agree that, to fulfill Defendant's request, Mr. Casey had to accept the terms of the Agreement by selecting the button next to "I agree with the Policies and Procedures" before completing Defendant's enrollment. Defendant would not have become a Promoter without Mr. Casey's acceptance of the Agreement on his behalf, as the system will not allow an individual to complete enrollment otherwise. Defendant testified that he was not aware of any agreement necessary to become a Promoter and that Mr. Casey did not inform him of any agreement. Even accepting his position as true, the court finds this argument unavailing, as Mr. Bland's lack of knowledge does not negate that the authority was given to Mr. Casey, and case law supports the court's conclusion.

An Indiana court has held that a person created an agency relationship when she gave another person her credit card information to complete an online purchase for her. *Adsit Co., Inc. v. Gustin*, 874 N.E.2d 1018, 1023-24 (Ind. App. 2007). To complete the purchase, the individual had to accept an online agreement before moving forward. *Id.* Even though the person did not personally accept or have awareness of the agreement or its terms, the court held that she was still bound by the terms because she created an agency relationship with the person who made the purchase and entered the agreement on her behalf. *Id.* The court reached this conclusion despite

**Memorandum Opinion and Order - Page 15**

the uncertainty, based on the record, surrounding the exact nature of the communications between the parties. *Id.*

Defendant's conduct was even more explicit than that in *Adsit*. Here, Defendant explicitly gave Mr. Casey permission to enroll him as a Promoter, and, to fulfill that request, Mr. Casey was required to accept the Policies and Procedures on his behalf. Notably, Defendant gave Mr. Casey the information necessary to complete his enrollment, and the enrollment confirmation showed Defendant's name and personal information, not Mr. Casey's. Moreover, Defendant's attempt to disregard the existence of an Agreement is contrary to his conduct. Specifically, Defendant, after becoming a Promoter, began to develop his downline team of Promoters and, ultimately, earned over $1,000,000 in commissions. The court, therefore, concludes that Mr. Casey had actual authority to accept and enter into the Agreement on Defendant's behalf, and, accordingly, he is bound by its terms.

### c. The Applicability of the Agreement to Personal Jurisdiction and Venue

The court must now determine whether Defendant is bound by the specific provisions of the Agreement, establishing personal jurisdiction and venue in the federal courts in Dallas County, Texas. Parties may employ "[a] variety of legal arrangements . . . to represent express or implied consent to the personal jurisdiction of the court." *Insurance Corp. of Ireland, Ltd. V. Compagnie des Bauxites de Guinee*¸456 U.S. 694, 703-04 (1982). For example, "parties to a contract may agree in advance to submit to the jurisdiction of a given court." *Id.* (citing *National Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964). The key issue is whether Indiana law enforces a party's contractual wavier of personal jurisdiction in a "clickwrap" agreement. A "clickwrap" agreement

> appears on an internet webpage and requires that a user consent to any terms and conditions by clicking on a dialog box on the screen . . . to proceed with the internet

> transaction. Even though they are electronic, clickwrap agreements are considered to be writings because they are printable and storable.

*Adsit Co., Inc.*, 874 N.E.2d at 1023 (citing *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007). The Agreement at issue is considered a "clickwrap" agreement, as an individual had to click on the hyperlinked text to access the document containing the Policies and Procedures. The parties concede this point. Under Indiana law, the "same contract principles generally apply to internet 'clickwrap' agreements." *Jallali v. National Bd. of Osteopathic Med. Exam'rs, Inc.*, 908 N.E.2d 1168, 1173 (Ind. App. 2009) (citation omitted). Accordingly, "[t]he primary focus when deciding whether a clickwrap agreement is enforceable is whether the party clicking it had reasonable notice of and manifested to the agreement." *Id.* (citation omitted). As previously discussed, the Policies and Procedures were hyperlinked in blue next to the box Mr. Casey had to select in the Agreement; therefore, the court concludes that Mr. Casey had notice of the Agreement's existence. Additionally, to complete Defendant's enrollment as he requested, Mr. Casey had to assent to the terms of the Agreement, which he did by selecting the appropriate box. That Defendant did not personally select or assent to the terms of the Agreement has no bearing on the enforceability of the forum-selection clause as demonstrated in *Adsit*. *See* 874 N.E.2d at 1024 (holding that principal was bound by her agent's acceptance of a clickwrap agreement, which included a forum-selection clause, and, thus, the court properly exercised personal jurisdiction over the principal).

Under Indiana law, and based on these facts and circumstances, Mr. Casey's actions, as authorized by Defendant, are sufficient to bind him to the terms of the Agreement, including the clauses regarding personal jurisdiction and venue. Section 8.15 of the Agreement provides in pertinent part that a promoter submits, "with respect to any matters not determined by or subject

to arbitration[,] to the personal jurisdiction of the state and federal courts within Dallas, Texas." Defendant provides no assertion that this language is insufficient to constitute a waiver of personal jurisdiction. The court, therefore, concludes that Defendant, through the agency relationship imposed upon Mr. Casey, assented to the terms of the Agreement and, thus, consented to personal jurisdiction in the state and federal courts in Dallas, Texas. The court further concludes that he waived his objection to a personal jurisdiction defense by consenting to the personal jurisdiction of the court in the Agreement. Accordingly, the court determines that it has personal jurisdiction over Defendant by his consent via the Agreement, and, thus, it need not address whether exercising this authority "comport[s] with fair play and substantial justice." *Burger King*, 471 U.S. at 277. (citation omitted). The court, therefore, will deny Defendant's motion to dismiss for lack of personal jurisdiction. Similarly, the court will deny Defendant's motion to dismiss for improper venue, as section 8.15 of the Agreement also provides that the federal courts in Dallas County, Texas are a proper venue.

   2. **Failure to State a Claim**

Defendant asserts that Plaintiff has failed to sufficiently plead at least one element of each cause of action it pleaded in its Petition. Upon review of the allegations, the court determines that Plaintiff has sufficiently pleaded facts for all counts to state plausible claims above a speculative level, such that the court may reasonably infer that Defendant is liable to Plaintiff for the claims asserted. Accordingly, the rest of the matters presented are better suited for summary judgment or trial. The court, therefore, will deny Defendant's Rule 12(b)(6) motion to dismiss for failure to state a claim as it relates to Counts One to Five of the Petition.

### 3. Texas Anti-Slapp Act[6] (Counts 2, 3, 4, and 5)

Defendant also seeks to dismiss Counts 2, 3, 4, and 5 pursuant to the Texas Citizens' Participation Act ("TCPA"). At the time of filing, the parties agreed that the Fifth Circuit had yet to resolve whether the TCPA applies to diversity cases in federal court. Pl.'s Resp. ¶¶ 55-56; Def.'s Reply 11. On August 23, 2019, however, the Fifth Circuit issued an opinion, *Klocke v. Watson*, 936 F.3d 240 (5th Cir. 2019), addressing this precise issue. In this recent opinion, the court reiterated that "[t]he *Erie* line of authorities holds that substantive state law must be applied in federal courts in diversity cases . . . but state procedural law yields to the applicable Federal Rules." *Klocke*, 936 F.3d at 244. Accordingly, the court, as a matter of first impression, held that "[b]ecause the TCPA's burden-shifting framework imposes additional requirements beyond those found in [Federal Rules of Civil Procedure] 12 and 56 and answers the same question as those rules, the state law cannot apply in federal court." *Id.* at 245. Therefore, in accordance with the Fifth Circuit ruling, the court determines that the TCPA does not apply in this matter, and, accordingly, the court will deny Defendant's motion to dismiss based on the TCPA.

### IV. Conclusion

For the reasons herein stated, the court **denies** Defendant's Motion to Dismiss (Doc. 22); and **overrules and denies** Defendant's Evidentiary Objections to Declaration of Christopher Schmidt and Motion to Strike (Doc. 49).

**It is so ordered** this 27th day of September, 2019.

*/s/ Sam A. Lindsay*
Sam A. Lindsay
United States District Judge

---

[6] The Texas Anti-Slapp Act is also known as the Texas Citizen's Participation Act ("TCPA"), and Defendant uses the latter throughout his motion.