IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **LE-VEL BRANDS, LLC,** | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| **v.** | § | Civil Action No. **3:19-CV-00154-L** |
| | § | |
| **DUSTIN BLAND,** | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Plaintiff Le-Vel Brands, LLC's Motion for Preliminary Injunction (Doc. 14), filed February 9, 2019. The court determined that a hearing was necessary to assist in the resolution of this matter, and on February 26-27, 2019, the court held a hearing on the motion. After careful consideration of the motion, response, reply, evidence, record, testimony, arguments at the hearing, and applicable law, the court **grants in part and denies in part** Plaintiff's Motion for Preliminary Injunction (Doc. 14).

## I.    Factual and Procedural Background

On January 1, 2019, Le-Vel ("Plaintiff" or "Le-Vel") filed its Original Petition and Verified Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction (Doc. 1-3) ("Petition") in the 68th Judicial District Court of Dallas County, Texas. In its Petition, it alleges several causes of action against Defendant Dustin Bland ("Defendant" or "Mr. Bland"): (1) breach of contract; (2) business disparagement; (3) defamation; (4) tortious interference with existing contracts; and (5) tortious interference with prospective business relations. These claims stem from Defendant's alleged violation of the restrictive covenants provided in an agreement

between the parties, referred to as the Promoter Agreement[1] ("Agreement"). On January 11, 2019, Associate Judge Monica Purdy granted Plaintiff's Application for a TRO, which expired on January 28, 2019.

On January 18, 2019, Defendant removed the action based on diversity jurisdiction. On January 23, 2019, Plaintiff asked the court to extend the TRO (Doc. 4), but the court denied its request (Doc. 10). On February 9, 2019, Plaintiff filed a Motion for Preliminary Injunction (Doc. 14). In its motion, Plaintiff contends that Defendant became a promoter in April 2017 "by affirmatively agreeing to the terms of the Promoter Agreement."[2] Section 3.19 of the Agreement ("Non-Solicitation Provision") states:

> During the term hereof and for a period of twelve (12) months after the termination or expiration of the relationship between a Promoter and Le-Vel, for any reason whatsoever, the Promoter shall not on his/her own behalf or on behalf of any other person, partnership, association, corporation or other entity, directly or indirectly:
>
> a) Attempt to obtain the withdrawal from Le-Vel or its affiliates of any of their respective employees, independent contractors or Promoters[;]
>
> b) Hire any employee, independent contractor or Promoter of Le-Vel or its affiliates[;]
>
> c) Approach or solicit any customer/client, potential customer/client, maturing business opportunity, manufacturer or supplier of Le-Vel or any of its affiliates, in order to attempt to direct any of the same away from Le-Vel or its affiliates;
>
> d) Induce or persuade any customer/client, potential customer/client, maturing business opportunity, manufacturer or supplier of Le-Vel or any of its affiliates, agent or other person under contract or otherwise

---

[1] The parties use different verbiage to the refer to the agreement at issue. Le-Vel refers to it as the "Promoter Agreement," and Mr. Bland refers to it as "Policies and Procedures." The document itself is titled both "Promoter Agreement" and "Policies and Procedures" in the upper left-hand corner of the first page. Accordingly, the terms are used interchangeably.

[2] Defendant disputes the existence of an agreement between the parties. In its September 27, 2019 memorandum opinion and order (Doc. 60), however, the court established that Defendant, by granting authority to an agent, accepted the Promoter Agreement and its terms. Accordingly, the court incorporates its ruling in that order here and will not reassess whether a contract exists.

associated or doing business with Le-Vel or its affiliates to reduce or alter any such association or business with Le-Vel or its affiliates;

e) Solicit or divert any business away from Le-Vel or its affiliates; or

f) Otherwise interfere or attempt to interfere with any of the contractual business or economic relationships of Le-Vel or its affiliates with other parties.

It is agreed that this provision shall survive the termination or expiration of the Agreement.[3]

Additionally, by agreeing to the Policies and Procedures and, thus, assenting to section 1.2, a Promoter agrees that "under no circumstance [will he or she] disparage or infringe upon the Le-Vel name, image or reputation in connection with the promotion of Le-Vel products or misappropriate any confidential or proprietary information or trade secrets (including Customer and Promoter names and address lists) for use by the Promoters or others."

On December 28, 2018, at 12:49 p.m., Le-Vel sent Mr. Bland an e-mail, informing him that it "received complaints from the field that [he had] gone (or [was] planning to go) to another direct sales company (Isagenix)," and asked him to provide information related to these allegations so the company could investigate the claims. Approximately three hours later, Le-Vel sent Mr. Bland a second e-mail, titled "Termination/Cease and Desist – Violation of Le-Vel's Non-Solicitation Agreement," stating that the company believed "with reasonable certainty, that [he was] engaging in blatant violations of the Non-Solicitation Agreement by contacting Le-Vel Promoters in [an] attempt to direct them away from Le-Vel and over to Isagenix [a competing

---

[3] In his Opposition to Imposition of a Preliminary Injunction and Brief in Support (Doc. 17), Defendant contends that section 3.12 of the Agreement makes the entire contract null and void. Section 3.12 states in pertinent part:

In the event that Le-Vel deems it necessary to terminate an individual's Promoter position, the termination would render the terms of the Agreement between Le-Vel and that individual null and void.

Section 3.19, however, carves out an exception for the Non-Solicitation Provision. Accordingly, the court **determines** that Defendant's assertion is without merit.

health and wellness company] via Zoom Video Conference[4] meetings and other written and verbal communications." Further, Le-Vel warned Mr. Bland that failure to cease and desist his conduct would result in legal action, but, despite this warning, Plaintiff contends that he continued to solicit its Promoters and customers.

On February 21, 2019, Defendant filed his Motion to Dismiss Complaint (Doc. 22), asserting that Plaintiff's Petition should be dismissed pursuant to the following: (1) Federal Rule of Civil Procedure 12(b)(2) for a lack of personal jurisdiction; (2) Federal Rule of Civil Procedure 12(b)(3) for improper venue; (3) Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim as it relates to all alleged counts asserted in Plaintiff's Petition; and (4) the Texas Anti-Slapp Act as it relates to Counts Two through Five of Plaintiff's Petition.[5] On February 26-27, 2019, the court held a hearing regarding Plaintiff's request for a preliminary injunction. During this two-day hearing, the court heard testimony from Le-Vel corporate representatives, Promoters, and Mr. Bland.

Le-Vel contends that it received communications from other Promoters, including text messages and social media posts, supporting its allegation that Defendant violated the Non-Solicitation Provision. During the preliminary injunction hearing, Defendant testified that he has thousands of followers on social media and uses these platforms to expand his downline team. Prelim. Inj. Hr'g Tr. 242:31-243:13 (Feb. 26, 2019) (Doc. 33). He also admits to using Zoom as a method for recruiting individuals for his downline team. Specifically, Mr. Bland testified that he did not solicit anyone to join Isagenix before his termination from Le-Vel. Instead, on December 26, 2018, "he talked to two girls" in his Le-Vel downline team via Zoom to discuss the

---

[4] "Zoom" is a videoconferencing technology, similar to Skype, used to facilitate virtual meetings.

[5] On September 27, 2019, the court denied Defendant's Motion to Dismiss.

benefits and compensation at Isagenix. Prelim. Inj. Hr'g Tr. 4:28-5:9 (Feb. 27, 2019) (Doc. 32). At the time, he had not joined the Isagenix team. Although one of the individuals did not join Isagenix, he testified that he was trying to convince her to make the move. On December 30, 2018, Mr. Bland joined Isagenix and testified that within three days of joining, 150 of his downline team members at Le-Vel joined his team at Isagenix.

After his termination from Le-Vel, Mr. Bland admits he created Facebook posts to encourage Le-Vel Promoters to reach out about his role at Isagenix but asserts there was no need to solicit them, as these individuals sought him out for more information. On June 3, 2019, a few months after the hearing, he posted a Facebook video discussing his termination from Le-Vel and transition to Isagenix in detail, allegedly attempting to clear the air regarding rumors surrounding his departure from Le-Vel and his current business status.

## II.    Legal Standard for Preliminary Injunction

There are four prerequisites for the extraordinary relief of a preliminary injunction. A court may grant a preliminary injunction only when the movant establishes that:

> (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury [to the movant] outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) (citing *Canal Auth. of the State of Florida  v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (*en banc*)). The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a preliminary injunction can be granted. *Mississippi Power & Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993. Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the preliminary injunction.

## III.    Discussion

Le-Vel primarily seeks to enforce the Non-Solicitation Provision outlined in section 3.19 of the Agreement.  Pl.'s Br. ¶ 2.  Specifically, it requests that the court enjoin Mr. Bland from breaching the Non-Solicitation Provision of the Agreement and order him to cease any solicitation of its Promoters and customers for the twelve-month period established in the Agreement.[6]  *Id*. at 1-2.  Additionally, Le-Vel requests that the court enjoin Mr. Bland from making any statements, written or verbal, that "defame, disparage, or in any way criticize Le-Vel . . . ."  *Id.*  at 2.

### A.  Substantial Likelihood of Success on the Merits

In analyzing Le-Vel's substantial likelihood of success on the merits, the court must first determine which law applies to the Non-Solicitation Provision.  As the court noted in its September 27, 2019 memorandum opinion and order (Doc. 60), Indiana law applies in determining whether a contract existed between the parties, given Mr. Bland's dispute about the existence of a contract.  Upon careful consideration, the court determined that there was an agreement between Le-Vel and Mr. Bland by way of his agent, Chris Casey, and, accordingly, Mr. Bland was bound by the terms of the Agreement.  The Agreement, however, contains a choice-of-law provision, which provides that Texas law should govern "without regard to choice of law or conflicts of law principles."  Defendant challenges the choice-of-law provision and asserts that Indiana law, not Texas, should govern the parties' dispute.  Thus, the court must determine which applicable state law applies before addressing Plaintiff's request for injunctive relief.

### 1.  Choice-of-Law Analysis

Because the court is exercising diversity jurisdiction, the applicable law of the forum state, which, in this case, is Texas, governs the choice-of-law analysis.  *Klaxon Co. v. Stentor Elec. Mfg.*

---

[6] Le-Vel terminated Mr. Bland on December 28, 2018.  Thus, the Non-Solicitation Provision, if enforced, is in effect until December 28, 2019.

*Co.*, 313 U.S. 487, 496 (1941). Under Texas law, parties have the autonomy to agree that contractual disputes shall be governed by the law of another state. *Cardoni v. Prosperity Bank*, 805 F.3d 573, 580 (5th Cir. 2015) (citing *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 324 (Tex. 2014)). Texas courts tend to permit choice-of-law agreements and the position that they are enforceable; however, "it is not uncommon for a party to overcome them." *Cardoni*, 805 F.3d at 581 (citations omitted).

To render a choice-of-law provision unenforceable, a party must satisfy the standards outlined in Section 187(2) of the Restatement (Second) of Conflict of Laws, which provides that:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied ... unless either
>
>> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice[;] or
>> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement § 187(2); *see DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677-678 (applying the Restatement framework). Accordingly, the court must determine whether § 187(2)(a) or § 187(2)(b) deems the choice-of-law provision of the Agreement unenforceable.

While Texas does not have a substantial relationship to the parties or the Agreement, there is a reasonable basis for selecting Texas state law as the governing law given that Plaintiff is incorporated in Texas and has a Collin County, Texas mailing address.[7] *See Cardoni*, 805 F.3d at 581 ("The parties had a reasonable basis for agreeing that Texas law would apply given that [the

---

[7] Le-Vel is a cloud-based company, which means it does not have a corporate office.

employer] is headquartered in the state.").  Even though a reasonable basis exists, Texas law should

not be enforced when another state:

> (1) has a more significant relationship with the parties and the transaction at issue than the chosen state does under Restatement § 188;
>
> (2) has a materially greater interest than the chosen state does in the enforceability of a given provision; and
>
> (3) has a fundamental policy that would be contravened by the application of the chosen state's law.

*Cardoni*, 805 F.3d at 582 (citing *Drennen*, 452 S.W.3d at 325-27).

Before conducting this three-prong analysis, the court must first consider "whether there is

a state law [that] would apply under section 188 of the Restatement absent an effective choice of

law by the parties." *DeSantis*, 793 S.W.2d at 678.  Section 188 of the Restatement outlines the

"most significant relationship" test and, in employing this section, the court considers "(a) the

place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d)

the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place

of incorporation[,] and place of business of the parties."  Restatement (Second) of Conflict of Laws

§ 188.[8]  "These contacts are weighed not by their number, but by their quality."  *Cardoni*, 805

F.3d at 582-83 (internal quotation marks and citation omitted).  Applying this analysis, the court,

in its September 27, 2019 memorandum order and opinion, determined that Indiana law had the

most significant relationship with the parties and the Agreement; thus, absent a choice-of-law

---

[8] Defendant also contends that Restatement (Second) of Conflict of Laws § 196 applies as the Agreement is a contract for services.  In pertinent part, section 196 states:

> The validity of a contract for the rendition of services and the rights create thereby are determined, in the absence of an effective choice-of-law by the parties, by the local law of the state where the contract requires the services, or a major portion of the services, be rendered . . . .

The court need not address this provision specifically, as it does not change the court's analysis and determination of the applicable state law.

provision, Indiana law would apply. Nonetheless, the court must still determine (1) whether Indiana has a materially greater interest than Texas in determining whether the Non-Solicitation Provision is enforceable and (2) whether the application of Texas law would be contrary to a fundamental policy of Indiana.

Considering the facts and circumstances of this matter, and in accordance with Texas law, the court determines that Indiana has a materially greater interest in determining whether the Non-Solicitation Provision is enforceable. Generally, Indiana is directly interested in Mr. Bland as an employee in the state and the enforceability of restrictive covenants on his right to employment. *DeSantis*, 793 S.W.2d at 679 (finding that Texas had a materially greater interest in enforcing a non-compete agreement executed by a Texas resident rather than Florida where the employer was headquartered); *Cardoni*, 805 F.3d at 584-85 (finding that the employee's state of residence, rather than the state where the employer is headquartered, had a materially greater interest in the enforceability of non-compete agreements). While both Indiana and Texas have a shared interest in Le-Vel as a company that conducts business in each state through its Promoters, this interest is outweighed by a state's interest to manage the enforceability of restrictive covenants against one of its residents. *See id.* Accordingly, the court concludes that Indiana has a materially greater interest in whether the Non-Solicitation Provision against Mr. Bland is enforceable.

The first two factors of the conflict-of-law analysis weigh in favor of Indiana law; however, the court must also determine whether applying Texas law, as dictated in the Agreement, would be contrary to a fundamental policy of Indiana. *See Drennen*, 452 S.W.3d at 327 (citing Restatement (Second) of Conflict of Laws § 187(2)(b)). The Restatement does not define "fundamental policy" for purposes of this analysis. Restatement (Second) of Conflicts of Law § 187 cmt. g ("No detailed statement can be made of the situations where a 'fundamental' policy of

the state of the otherwise applicable law will be found to exist."). Under Texas law, to determine whether a state has a "fundamental" policy, the court must:

> focus [] on whether the law in question is a part of state policy so fundamental that the courts of the state will refuse to enforce an agreement contrary to that law, despite the parties' original intentions, and even though the agreement would be enforceable in another state connected with the transaction.

*DeSantis*, 793 S.W.2d at 680. That the outcome of a case will differ depending on which state law is applied does not render the law of a state contrary to a fundamental policy. *Cardoni*, 805 F.3d at 585 (citing *DeSantis*, 793 S.W.2d at 680).

Applying the guidance in *DeSantis*, the court determines that applying Texas law, as the parties agreed in the Agreement, would not be contrary to a fundamental policy in Indiana. Both Texas and Indiana generally disfavor restraints on trade, such as non-solicitation and non-compete agreements.[9] *See* Tex. Bus. & Com. Code § 15.05(a) ("Every contract, combination, or conspiracy in restraint of trade or commerce is unlawful."); *see also Central Ind. Podiatry, P.C. v. Krueger*, 882 N.E.2d 723, 728-29 (Ind. 2008) ("This Court has long held that noncompetition covenants in employment contracts are [a] restraint of trade and disfavored by the law."). Similarly, notwithstanding this position, both states enforce these covenants if the restraint of trade is reasonable. *See* Tex. Bus. & Com. Code § 15.50(a) (outlining the exception to section 15.05 permitting reasonable restraints of trade); *see also Central Ind. Podiatry, P.C.*, 882 N.E.2d at 729 ("To be enforceable, a noncompetition agreement must be reasonable."). Moreover, the similarities in the substantive analysis of both states when determining whether to enforce a non-solicitation clause make it difficult for the court to ascertain whether applying Texas law would be contrary to a fundamental policy of Indiana. Based on its analysis, however, the court concludes

---

[9] Both Texas and Indiana analyze non-solicitation and non-compete agreements under the same standard.

that applying Texas law would not be contrary to a fundamental policy of Indiana, as both states generally disfavor such restrictions and the required analysis is substantively similar. Further, whether the court applies Texas or Indiana law, it concludes that the result would be the same.

Although Indiana (1) has the most significant relationship, (2) would apply absent a choice-of-law provision in the Agreement, and (3) has a materially greater interest in the enforceability of the Non-Solicitation Provision, applying Texas law would not be contrary to a fundamental policy of Indiana. The court, therefore, determines that the choice-of-law provision in the Agreement governs and, accordingly, will apply Texas law in determining whether the Non-Solicitation Provision is enforceable. Further, the court determines that its analysis also applies to all claims against Mr. Bland asserted by Le-Vel, as the similarities between Texas and Indiana law related to (1) Breach of Contract; (2) Business Disparagement and Defamation[10]; (3) Tortious Interference with Existing Business Relations; and (4) Tortious Interference with Prospective Business Relations claims are similar in nature and would yield the same result. Accordingly, the court will apply Texas law when analyzing these claims as well.

## 2. Enforceability of the Non-Solicitation Provision

Under Texas law, non-solicitation clauses constitute restraints on trade and, like non-compete clauses, are governed by the Texas Business and Commerce Code. *Marsh USA, Inc. v. Cook*, 354 S.W.3d 764, 769 (Tex. 2011). Pursuant to section 15.50(a) of the Texas Business and Commerce Code,

> a covenant not to compete is enforceable if [(1)] it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made [and (2)] to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

---

[10] In its Original Petition, Plaintiff asserts business disparagement and defamation as two separate counts. In its Motion for Preliminary Injunction, however, it combines the two into one claim. Given business disparagement and defamation require two distinct analyses, the court will address each one separately.

Thus, the court must first consider whether an otherwise enforceable agreement exists, which it has already determined. As noted in a previous order (Doc. 60), the court held that an agreement existed between Le-Vel and Mr. Bland. The Non-Solicitation Provision was included in the Agreement at the time Defendant, through his agent, assented to its terms. Plaintiff contends that in exchange for the Non-Solicitation Agreement, it provided "support and confidential information to [Mr. Bland]." Pl.'s Br. ¶ 38. Specifically, Plaintiff asserts it gave him access to confidential, proprietary, or secret information or data of Le-Vel, including:

> (a) all information contained in any genealogical or downline report, including access to individuals' information not personally enrolled by a Promoter; (b) information relative to the current or proposed business, sales and marketing plans of Le-Vel and financial information related thereto; (c) costs and pricing information; (d) product information; or (e) identification or personnel or other possible resources for possible use in the business of Le-Vel [ ]."

*Id.* Additionally, Plaintiff presented evidence that Mr. Bland had access to a Dropbox account, which housed information regarding Le-Vel sales processes and other company-specific information. Moreover, a Promoter must accept the terms of the Policies and Procedures to become a Promoter and, more importantly, to receive its earned commissions. Defendant does not dispute Plaintiff's position and, instead, acknowledges that he has accepted the terms on behalf of others when completing their enrollment as a Promoter. Accordingly, the court determines that the Non-Solicitation Provision is ancillary to and part of the Agreement, and, therefore, the first prong of Section 15.50(a) is satisfied.

The court must now determine whether the restriction was reasonable and did not impose a greater restraint than necessary to protect to the goodwill or other business interest of Le-Vel. Plaintiff contends that the Non-Solicitation Provision was "designed to prevent [Mr.] Bland from disclosing or using this Confidential Information against Le-Vel, soliciting Le-Vel's customer and

Promoter network, driving business away from Le-Vel, disparaging or defaming Le-Vel, or otherwise causing injury to Le-Vel's business reputation and goodwill." Pl.'s Br. ¶ 39. Under Texas law, "[b]usiness goodwill, confidential or proprietary information, trade secrets, customer information, and specialized training are examples of interests that can be, in appropriate circumstances, worthy of protection . . . ." *Marsh USA, Inc.*, 354 S.W.3d at 777. Defendant admits that he earned over $1,000,000 in commissions while working at Le-Vel and was one of its top Promoters. He also had a team of approximately 16,000 downline Promoters and 65,000 customers. Accordingly, his role and influence are probative of his ability to affect or influence, both positively and negatively, the good will of the company and encourage customers and Promoters to leave the company. The court determines it is also more likely than not that he received confidential and proprietary information from Le-Vel to aid his financial growth with the company. Thus, the court determines that Le-Vel had a protectable interest at stake worthy of protection.

The court also determines that the restraints outlined in the Non-Solicitation Provision are reasonable. First, the twelve-month restriction is reasonable, as "Texas courts have generally upheld non-compete periods ranging from two to five years as reasonable." *Brink's Inc. v. Patrick*, No. 3:14-CV-775-B, 2014 WL 2931824, at *5 (N.D. Tex. June 27, 2014) (citations supporting this proposition omitted). Notably, due to the parties' continuous requests to supplement the record and file additional documents in this case, there are only three months remaining on the duration of the Non-Solicitation Provision.[11] Nevertheless, the time restriction is enforceable as written.

---

[11] The Non-Solicitation Provision states that it is in effect "[d]uring the term hereof and for a period of twelve (12) months after the termination or expiration of the relationship between a Promoter and Le-Vel . . . ." Le-Vel terminated Mr. Bland on December 28, 2018, and, accordingly, the Non-Solicitation Provision expires on December 28, 2019.

Second, while the Non-Solicitation Provision contains no geographic restriction, this in and of itself does not render the clause unreasonable. *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 329 ("Accordingly, notwithstanding the text of § 15.50(a), a non-solicitation agreement may be enforceable under Texas law even if it does not expressly contain geographical limits.") (citation omitted). The court can reasonably infer that the Non-Solicitation Provision included an implied nationwide restriction. Given Le-Vel is a cloud-based organization with no corporate offices, and Promoters across the country conduct all of their business remotely, the court concludes that a nationwide restriction is reasonable, as Promoters have the capability of recruiting others across state lines.

Third, the plain language of the Non-Solicitation Provision does not prohibit Mr. Bland from working with a competitor of Le-Vel, such as Isagenix. Instead, he is prohibited from approaching and soliciting Le-Vel Promoters, employees, Independent Contractors, and current and potential customers. Excluding the language discussed below, the Non-Solicitation Provision reasonably restricts the scope of activity of which Mr. Bland is prohibited from engaging. The court, however, determines that the restriction that Mr. Bland is prohibited from soliciting, approaching, or persuading potential customers or clients from Le-Vel is unreasonable, as he has no ability to identify this set of individuals; nor does Plaintiff provide any evidence that he is able to ascertain persons within this group. Accordingly, the court concludes that, except for the prohibition against the solicitation of potential customers and clients, the Non-Solicitation Provision reasonably limits Mr. Bland's scope of activity.

### 3. Substantial Likelihood of Success on the Breach of Contract Claim

As it relates to the breach of contract claim based on Mr. Bland's violation of the Non-Solicitation Provision, the court determines that there is a substantial likelihood that Le-Vel will

prevail on the merits. Under Texas law, the essential elements of a breach of contract claim are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) a breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Group, LLC.*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, LLC.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2011)) (internal quotation marks omitted). The court has already established that a valid contract between the parties exists, and there is no dispute that Plaintiff paid Defendant over $1,000,000 in commissions pursuant to the Agreement. The court, therefore, focuses on whether Defendant breached the Agreement by violating the Non-Solicitation Provision. Based on his testimony and conduct, and the court's credibility assessments, it determines he has breached the Agreement.

Plaintiff contends that Mr. Bland "sent text messages, social media posts and direct messages, conducted Zoom video conferences, and arranged or participat[ed] in direct communications with individuals that he knew were current Promoters of Le-Vel, marketing Isagenix products and recruiting them to join him at Isagenix." Pl.'s Br. ¶ 43. On December 28, 2018, Le-Vel sent a letter to Mr. Bland reminding him of his obligations pursuant to the Agreement, but he did not oblige. Instead, he admits to hosting a Zoom video conference call with an individual he knew to be a Le-Vel Promoter, before this termination from Le-Vel, to discuss the benefits of joining Isagenix. Mr. Bland also testified that he did not consider his actions "soliciting." This argument is disingenuous and unpersuasive, and the court frowns on Defendant's attempt to mischaracterize the facts of the case.

Without wallowing in semantics, the court determines that not only did Mr. Bland's conduct constitute soliciting, but he was also fully aware, at the time he testified, that it did. He

attempts to deny this on several occasions, but his testimony reflects that: (1) he received notice that his conduct was in violation of the Agreement; (2) he did not contest his suspension and subsequent termination or question the validity of Le-Vel's decision; (3) he sought advice of counsel regarding the Non-Solicitation Provision; and (4) he, despite his awareness of its terms, continued to encourage and solicit Le-Vel Promoters through cryptic and subliminal messages and videos he posted on Facebook. Mr. Bland's conduct, including actions since the preliminary injunction hearing,[12] does not inspire confidence in the court regarding his testimony. That Defendant steers away from mentioning Le-Vel by name is quite beside the point. Given his social media presence and thousands of followers, the court, and his followers, can reasonably infer that he is referencing his former relationship with Le-Vel.

The Agreement explicitly prohibits him from inducing or persuading Le-Vel Promoters and customers to "reduce or alter" their relationship with the company, and he assented to this restriction when he became a Promoter. Notably, he was aware of his obligation pursuant to the Agreement, sought legal advice concerning its terms, and still continued conducting business in violation of those terms. The court, therefore, concludes that Le-Vel has demonstrated a substantial likelihood of success on the merits based on Mr. Bland's violation of section 3.19 of the Agreement.

As it relates to Plaintiff's claims for business disparagement and defamation, and its request to enjoin Defendant from making certain statements, the court determines that while the record reflects that certain comments may be deemed disparaging or defamatory, it is unclear, without

---

[12] On June 3, 2019, Defendant went "live" on Facebook to discuss his journey from Le-Vel to Isagenix. He does not mention Le-Vel by name, but he makes specific reference to the exact facts of this case, including that Le-Vel requested emergency relief from the court. He then goes on to make statements regarding his negative experience with rumors and negative comments from other Le-Vel Promoters without addressing the company or its Promoters directly.

more, that Plaintiff has a substantial likelihood of success on the merits on these claims. Moreover, Plaintiff is not entitled to injunctive relief on its business disparagement and defamation claims. The court agrees with Defendant that an injunction serves as a prior restraint on free speech and should only be permitted if the speech at issue evokes a threat of danger. *See Kinney v. Barnes*, 443 S.W.3d 87 (Tex. 2014) (discussing Texas law that injunctive relief is an impermissible prior restraint on free speech absent a showing the speech evokes a threat of danger). Plaintiff provides no evidence that Defendant has made any statements that evoke a threat of danger to Le-Vel, its employees, or affiliates. Similarly, "defamation alone is not a sufficient justification for restraining an individual's right to speak freely." *Id.* Accordingly, the court concludes that Plaintiff is not entitled to injunctive relief as it relates to its request to enjoin Defendant from making disparaging, defamatory, or critical statements, as doing so would be a prior restraint on his free speech.

As for the remaining claims asserted by Le-Vel, the court determines that it need not analyze each claim, as Le-Vel's demonstration of the substantial likelihood of success on its breach of contract claim is sufficient to enjoin Mr. Bland from the remaining relief requested if all elements for injunctive relief are satisfied.

### B. Substantial Threat of Irreparable Harm

Le-Vel contends that Mr. Bland continues to solicit "Le-Vel customers and Promoters through text messages, social media platforms, and phone calls in an effort to take business away from Le-Vel in favor of a competitor." Pl.'s Br. ¶ 53. Additionally, it contends that he is publicly making negative statements about Le-Vel, which could cause irreparable damage to its business, goodwill, and reputation. *Id.* Mr. Bland's testimony aligns with Plaintiff's position, and it is evident to the court that he has solicited individuals known to be Le-Vel Promoters by making

statements, albeit without identifying Le-Vel by name, about his relationship with the company. As he is also working for a competing company, it is more likely than not that he is using information he received from Le-Vel regarding their business practices to develop further his business at Isagenix. Moreover, Mr. Bland gave no indication in his testimony that he intended to cease his conduct, despite his awareness that he was violating the Agreement. Given Defendant's ongoing conduct, the court determines that Le-Vel has suffered damages that cannot be remedied monetarily, nor can an amount be ascertained at this stage of the proceedings. The court, therefore, concludes that Mr. Bland's actions and testimony establish that Plaintiff is likely to suffer irreparable harm.

### C.  Balancing Harms

The court further determines that Le-Vel has demonstrated that greater injury will result from denying its request to enjoin Mr. Bland from soliciting Le-Vel customers and Promoters than from granting such request. Mr. Bland contends that Plaintiff is trying to "co-opt the 'Dustin Bland Network'" of his "40,000 personal friends, family, and followers that he had before ever hearing of Le-Vel." There is some merit to Mr. Bland's assertion, but the court has already determined that it will not enjoin him from soliciting potential customers or clients, as this provision is undefined and, accordingly, enforcing it would be unreasonable. To the extent individuals in his network, however, are current customers or Promoters of Le-Vel, he should reasonably be prohibited from soliciting those individuals.

Based on Mr. Bland's testimony and conduct, and the court's credibility determination regarding Mr. Bland, it can reasonably infer that he has no intention of abiding by this restriction. As previously stated, the court is concerned that Mr. Bland has not been completely transparent in his testimony and is mischaracterizing his actions to minimize the potential consequences. While

he makes subliminal statements in an attempt to mask the real target, it is easy to determine he is speaking about Le-Vel and his alleged experience with the company. Thus, it is reasonable for the court to determine that, by way of his social media presence, he has been and will continue to solicit Le-Vel Promoters and customers. Accordingly, the court concludes that Plaintiff has met this third requirement.

Finally, the court examines the fourth requirement: whether the issuance of a preliminary injunction will disserve the public interest. The court determines that the public has an interest in knowing and understanding that agreements between parties will be honored, that contracts will be enforced, and that solicitation of an employer's customers and employees in violation of these kinds of contract will not be permitted. Moreover, the public has an interest in knowing and understanding that persons who breach their agreements may not illegally profit or otherwise benefit from such conduct. The court, therefore, determines that this fourth requirement also has been satisfied.

As Le-Vel has demonstrated that it has a substantial likelihood of succeeding on the merits with respect to its breach of contract claim concerning Mr. Bland's violations of the Non-Solicitation Provision, that it will suffer immediate and irreparable harm if the preliminary injunction is denied, that the threatened harm to it outweighs any threat of harm to Mr. Bland, and that the preliminary injunction will not disserve the public interest, the court will grant in part and deny in part Plaintiff's request for injunctive relief in accordance with this opinion.

## IV.    Conclusion and Preliminary Injunction

For the reasons stated herein, the court **grants in part** and **denies in part** Plaintiff's Motion for Preliminary Injunction (Doc. 14) by modifying the relief requested to comport with the determinations herein made. The court hereby **issues** a preliminary injunction and **enjoins and**

**prohibits** Defendant Dustin Bland, his agents, employees, representatives, attorneys, and any other person acting on his behalf or in active participation or concert with him from:

a.  **Directly or indirectly, on his behalf or on behalf of any other person, partnership, association, corporation, or other entity, attempting to obtain the withdrawal from Le-Vel or its affiliates of any of their respective employees, independent contractors, or Promoters;**

b.  **Directly or indirectly, on his behalf or on behalf of any other person, partnership, association, corporation, or other entity, hiring any employee, independent contractor, or Promoter of Le-Vel or its affiliates;**

c.  **Directly or indirectly, on his behalf or on behalf of any other person, partnership, association, corporation, or other entity, approaching or soliciting any customer of Le-Vel or its affiliates in order to attempt to direct any of the same away from Le-Vel or its affiliates;**

d.  **Directly or indirectly, on his behalf or on behalf of any other person, partnership, association, corporation, or other entity, inducing or persuading any customer of Le-Vel or any of its affiliates to reduce or alter any such association or business with Le-Vel or its affiliates;**

e.  **Directly or indirectly, on his behalf or on behalf of any other person, partnership, association, corporation, or other entity, soliciting or diverting business away from Le-Vel or its affiliates; and**

f.  **Directly or indirectly, on his behalf or on behalf of any other person, partnership, association, corporation, or other entity interfering or attempting to interfere with any of Le-Vel's contractual business or economic relationships with its customers or Promoters; and**

Le-Vel shall, in accordance with Federal Rule of Civil Procedure 65(c), post a bond in the amount of $25,000 or, in lieu of a bond, may deposit $25,000 cash into the court registry, which the court considers proper to pay the costs and damages, if any, sustained by Mr. Bland if it is later determined that he has been wrongfully enjoined. This preliminary injunction is not effective until Le-Vel posts such bond or makes the designated deposit with the clerk of court for the Northern District of Texas.

In accordance with section 3.19 of the Promoter Agreement, the preliminary injunction **shall remain in effect** until December 28, 2019.

**It is so ordered** this 30th day of September, 2019.

Sam A. Lindsay
United States District Judge